**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) No. CV 05-3032-PHX-SMM ) |
| Plaintiff, | ) **MEMORANDUM OF DECISION AND** ) **ORDER** |
| v. | ) ) |
| CREATIVE NETWORKS, LLC, an Arizona corporation, and RES-CARE, INC., a Kentucky corporation, | ) ) ) |
| Defendants. | ) ) |

Before the Court is Defendants Creative Networks, LLC and Res-Care, Inc.'s (collectively, "Defendants") Motion for Partial Summary Judgment (Doc. 97). Having considered the parties' memoranda and other submissions, the Court now issues this Memorandum of Decision and Order denying Defendants' motion.[1]

## FACTUAL BACKGROUND

Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), alleges that Defendants "discriminated against Rhonda Encinas-Castro and Kathryn Allen in retaliation for having opposed discrimination and/or for having participated in a proceeding pursuant to Title VII, including an investigation of alleged employment discrimination." (Doc. 106) Specifically, Rhonda Encinas-Castro ("Encinas-Castro")

---

[1] Defendants requested oral argument in connection with their Motion for Partial Summary Judgment (Doc. 97). The parties have had the opportunity to submit evidence and briefing. Accordingly, the Court finds the pending motion for summary judgment suitable for decision without oral argument and Defendants' request is denied. See LRCiv 7.2(f), 56.2.

1  claims that her employer, Creative Networks, LLC ("Creative Networks"), retaliated

2  against her by firing her for filing a discrimination charge with the EEOC (Doc. 97, 1:25-

3  2:1). Kathryn Allen ("Allen") claims that Creative Networks retaliated against her by

4  holding a corrective counseling session after she was identified as a witness in Encinas-

5  Castro's EEOC charge (Id. 2:1-4). Defendant Res-Care, Inc. ("Res-Care") is the parent

6  corporation of Creative Networks.

7        On May 16, 2003, Encinas-Castro filed a charge of discrimination with the EEOC

8  (Pl's Statement of Facts (PSOF) ¶ 1). After an EEOC representative interviewed

9  Encinas-Castro, she was told that the EEOC would finish the charge and mail it to her for

10  her signature (Id.). Subsequently, Encinas-Castro received the EEOC charge in the mail,

11  and she signed and dated it on Tuesday, May 20, before mailing it back to the EEOC

12  (Id.). The EEOC received the signed charge on Friday, May 23 (Id.). Encinas-Castro's

13  charge specifically included Allen's name as a witness to the discriminatory comments

14  (Id. ¶ 2).

15        Upon filing her charge with the EEOC, Encinas-Castro told several coworkers that

16  she had gone to the EEOC to file a charge (Id. ¶ 3). On May 16, the day Encinas-Castro

17  filed her discrimination charge, she advised Millie Santiago that she had gone to the

18  EEOC to file a charge and identified Allen as a witness (Id.; Doc. 106, Ex. 2, Encinas-

19  Castro Decl. ¶¶ 5-7). A few days later, on May 19, Encinas-Castro advised Ginger Call

20  ("Call") that she had gone to the EEOC to file a charge and identified Allen as a witness

21  (PSOF ¶¶ 3, 9). Call was a Project Manager with Creative Networks (Id. ¶ 8). Call then

22  informed Jennifer Clark ("Clark"), Call's supervisor, that there was a rumor that Encinas-

23  Castro was going to file a charge of discrimination with the EEOC (Id. ¶ 10). Clark

24  indicated that she was going to pass the information onto Ron Cornelison ("Cornelison"),

25  Executive Director for Creative Networks (Id. ¶¶ 11, 24). Also, on May 19, Encinas-

26  Castro told Bonnie Cooper ("Cooper") that she had filed an EEOC charge and named

27  Allen as a witness (Id. ¶¶ 3-4). Cooper then told Call that Encinas-Castro had filed a

28

charge, and Call told Cooper that she had already elevated the information about the charge to Cornelison (Id. ¶ 4).

Sometime after filing her charge, Encinas-Castro informed Allen that she had named her as a witness in the charge and that the EEOC may be contacting her (Id. ¶ 5). In turn, Allen confided in Edna Faulkner ("Faulkner"), Coordinator for the Maricopa Integrated Health Services ("MIHS") and Division of Developmental Disability ("DDD"), about Encinas-Castro's charge (Id. ¶¶ 5-6).  Allen also told Faulkner that she had been mentioned as a witness in Encinas-Castro's charge (Id. ¶ 6).  On May 29, 2003, Faulkner told Allen that she had been called into a meeting, "they" are aware of Encinas-Castro's charge and "everything is going to really explode now." (Id. ¶ 7).  Allen testified that Faulkner had said Leary and Clark were at the May 29 meeting (Doc. 106, Ex. 5, Allen Dep. 91:16-24).

Sometime before May 30, Call spoke again with Clark and Cornelison and advised them of a rumor that Encinas-Castro had gone to the EEOC (PSOF ¶ 12).  Cornelison and Clark replied, "Let's bring [Encinas-Castro] in and have a discussion with her."  (Id.)  A meeting with Encinas-Castro was held on May 30 and that same day, Cornelison fired Encinas-Castro (Id. ¶¶ 13-14).

After she was fired, Encinas-Castro called Allen and told her about the termination (Doc. 106, Ex.5, Allen Dep. 95:13-14).  Minutes later, Faulkner came to Allen's office and indicated that Cornelison wanted to speak with Allen (Id. 95:14-16).  In attendance at this meeting was Allen, Cornelison, Clark, Faulkner, and Operations Manager, Linda Leary ("Leary") (Id. ¶ 15).  The EEOC claims that Cornelison, Clark, and Faulkner all knew about Encinas-Castro's charge when they met with Allen (PSOF ¶¶ 5-6,9,12).  During the meeting, Cornelison told Allen, "I want to tell you something right now, I could fire you right now, because this is a right-to-work state, and I don't even have to have a reason, but I want to give you a chance to be a successful employee here."  (Id. ¶ 16)  Cornelison then asked Allen what she knew about Encinas-Castro's EEOC charge (Id. ¶ 17).  When Allen denied knowing anything, Cornelison told Allen, "'Well, there's

1   been talk that you have been calling back and forth to the Surprise office and spreading

2   rumors,' and . . . 'I want to really try and make you successful here,' and . . . 'I, out of all

3   the people in this company since I've started, I've noticed you with a negative attitude.'"

4   (Id. ¶ 18) Prior to the May 30 meeting, Allen had never been disciplined or counseled for

5   performance problems before (Id. ¶ 21).

6         During the meeting, Cornelison allegedly spoke to Allen in a belligerent and

7   hostile manner (Id. ¶ 22).  Since Encinas-Castro worked in the Surprise office until her

8   termination, Allen took the reference to her communications with the Surprise office to

9   mean her conversations with Encinas-Castro about the discrimination (Id. ¶ 20).  Faulkner

10  also took the comments about the Surprise office to mean Allen's conversations with

11  Encinas-Castro, since the two women were friends (Id. ¶ 30).  At the end of the meeting,

12  Cornelison indicated that he was going to have Faulkner monitor Allen in the future (Id.

13  ¶ 34).

14        Allen believed her job was threatened based upon (1) Cornelison's statement that

15  Allen could be fired "right now" because "Arizona is a right-to-work state"; (2) the

16  reference by Cornelison to the EEOC charge filed by Encinas-Castro shortly after her

17  termination earlier in the day; (3) Cornelison's angry and hostile demeanor; and (4)

18  Encinas-Castro's termination on the same day (Id. ¶ 23).  During the meeting, Allen never

19  acknowledged that she had a poor attitude or that she would improve her job

20  performance. (Id. ¶ 33)  Leary told Allen that the meeting was not related to Allen's job

21  performance (Id.).

22        Two months later, Allen quit her job, despite receiving no further counseling

23  (Def.'s Statement of Facts ("DSOF") ¶ 19).  After Allen gave Faulkner her notice of

24  resignation, she did not return to work the last two weeks (Id.).

25                          **PROCEDURAL BACKGROUND**

26

27

28

1    Allen filed a complaint against Defendants with the EEOC on June 3, 2003 (Doc.

2  97, Ex. A).[2]  On September 30, 2005, the EEOC filed suit, on behalf of Allen, under Title

3  VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of

4  1991 (Doc. 1).  The EEOC alleged that Defendants subjected Allen to adverse

5  employment actions in retaliation for opposing what she reasonably believed was

6  discrimination and/or participating in a proceeding pursuant to Title VII, including being

7  named as a witness in Encinas-Castro's charge of discrimination (Doc. 1, ¶ 10).  The

8  alleged retaliatory acts included discipline and threats of termination (Id.).

9                              **STANDARD OF REVIEW**

10    A court must grant summary judgment if the pleadings and supporting documents,

11  viewed in the light most favorable to the nonmoving party, "show that there is no genuine

12  issue as to any material fact and that the moving party is entitled to judgment as a matter

13  of law."  Fed. R. Civ. P. 56(c); see Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986);

14  Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law

15  determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248

16  (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the

17  outcome of the suit under the governing law will properly preclude the entry of summary

18  judgment."  Anderson, 477 U.S. at 248.  The dispute must also be genuine, that is, the

19  evidence must be "such that a reasonable jury could return a verdict for the nonmoving

20  party."  Id.; see Jesinger, 24 F.3d at 1130.

21    A principal purpose of summary judgment is "to isolate and dispose of factually

22  unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate

23  against a party who "fails to make a showing sufficient to establish the existence of an

24  _____

25    [2]This complaint alleged that after Allen's name was referenced in Encinas-Castro's
EEOC charge, Allen was called into a meeting with Cornelison, Faulkner, Clark, and Leary
26  (Doc. 97, Ex. A). During the meeting, "Cornelison made false accusations about me, advised
me my work performance would be monitored, and threatened to terminate my employment."
27  (Id.) Additionally, "Cornelison harassed me and intimidated me by advising me that Arizona
28  is a right to work state and he could terminated [sic] my employment at any time."  (Id.)

1   element essential to that party's case, and on which that party will bear the burden of

2   proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th

3   Cir. 1994).  The moving party need not disprove matters on which the opponent has the

4   burden of proof at trial.  See Celotex, 477 U.S. at 323-24.  The party opposing summary

5   judgment need not produce evidence "in a form that would be admissible at trial in order

6   to avoid summary judgment." Id. at 324.  However, the nonmovant "may not rest upon

7   the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific

8   facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita

9   Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v.

10  Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

11  **DISCUSSION**

12          Defendants seek partial summary judgment on the EEOC's claim of retaliation

13  related to Allen, asserting there are no genuine issues of material fact from which a jury

14  could conclude that Defendants retaliated against Allen in violation of Title VII.

15  Specifically, Defendants assert that the EEOC cannot establish a prima facie case of Title

16  VII retaliation as to Allen for two reasons: (1) the counseling session was not an adverse

17  employment action and (2) the EEOC cannot establish a causal link between Allen's

18  name appearing in Encinas-Castro's EEOC charge and the alleged retaliatory act of the

19  May 30, 2003 counseling session (Doc. 97, 5:3-7).

20  **I.     Preliminary Evidentiary Issues**

21          Defendants ask the Court to disregard the declarations submitted by Encinas-

22  Castro and Allen as self-serving and contradictory of their deposition testimony (Doc.

23  128, 7:11:13, 8:1-10). The Court finds that consideration of the declarations submitted by

24  Encinas-Castro and Allen is appropriate under Ninth Circuit caselaw.  In SEC v. Phan,

25  the Ninth Circuit pointed out that declarations often are "self-serving" "[a]nd properly so,

26  because otherwise there would be no point in submitting [them]." 500 F.3d 895, 909 (9th

27  Cir. 2007).  As a result, [t]hat an affidavit is self-serving bears on its credibility, not on its

28  cognizability for purposes of establishing a genuine issue of material fact." Id.  A court

1    can disregard a self-serving declaration at summary judgment only in certain situations,

2    such as when a declaration offers only conclusions, or is based upon facts outside the

3    declarant's personal knowledge.  Id.  Here, the declarations are properly based upon

4    Encinas-Castro and Allen's own actions about which they have personal knowledge (Doc.

5    106, Ex. 2, Encinas-Castro Decl; Doc. 106, Ex. 6, Allen Decl).

6          Nor is the fact that much of Encinas-Castro and Allen's declarations describe

7    conversations held with other Creative Networks employees that cannot otherwise be

8    corroborated a defect.  As the court pointed out in Phan, this is not unusual and is likely to

9    be the case with most conversations.  500 F.3d at 910.  As a result, the participant is not

10   disqualified from testifying about the exchange, subject to a credibility determination by

11   the finder of fact.  Id.  Since a court does not judge credibility, such self-serving

12   declarations can create a genuine issue of material fact sufficient to defeat summary

13   judgment.  Anderson, 477 U.S. at 250 ("Credibility determinations, the weighing of the

14   evidence, and the drawing of legitimate inferences from the facts are jury functions, not

15   those of a judge, whether he is ruling on a motion for summary judgment or for a directed

16   verdict.").

17         Moreover, Defendants argue that the declarations contradict Encinas-Castro and

18   Allen's deposition testimony (Doc. 128, 7:11:13, 8:1-10).  Defendants are correct that a

19   party cannot create a genuine issue of material fact by contradicting his earlier deposition

20   testimony.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1157 (9th Cir. 1999); Block v. City

21   of L.A., 253 F.3d 410, 419 n.2 (9th Cir. 2001).  However, the example given by

22   Defendants in their Reply does not demonstrate any such contradiction (Doc. 128, n.5).

23   In her deposition testimony on June 13, 2007, Encinas-Castro testified that she told Call

24   that she had gone to the EEOC to file a charge of discrimination (Doc. 128, Ex. E,

25   Encinas-Castro Dep. 87:21-88:8).  In her later declaration, Encinas-Castro stated that she

26   told Call that she had gone to the EEOC to file a charge and that Allen's name was

27   referenced in the charge (Doc. 106. Ex. 2, Encinas-Castro Decl. ¶ 5).  Encinas-Castro's

28   declaration elaborates on her conversations with Call and other managers and provides

additional detail of the content of those conversations.  Allen's declaration similarly provides further explanation of the May 30 meeting without being contradictory of her earlier deposition (Doc. 106, Ex. 6, Allen Decl.).  Therefore, the Court will consider both of the declarations when deciding the present summary judgment motion.

**II.   Retaliation**

The EEOC alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Title VII makes it an unlawful employment practice for an employer to discriminate against an individual because she has opposed any employment practice made unlawful by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation under Title VII.  42 U.S.C. § 2000e-3(a).  To establish a prima facie retaliation claim under Title VII, an employee must show that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action.  Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000); Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002). To show the requisite causal link, the plaintiff must present sufficient evidence to raise an inference that the protected activity was the likely reason for the adverse action.  Cohen v. Fred Meyer, 686 F.2d 793, 796 (9th Cir. 1982).  Essential to such a showing is evidence that the employer was aware that the plaintiff had engaged in protected activity.  Id.

If a plaintiff has shown a prima facie retaliation claim, then the burden shifts to the defendant to furnish legitimate nondiscriminatory reasons for the adverse employment action.  Ray, 217 F.3d at 1240.  If the defendant meets that burden, then the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive.  Id.  The plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Villiarimo

1   v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002).  Circumstantial evidence

2   relied on to show pretext must be "both specific and substantial." Id.

3          **A.     Protected Activity**

4          Although Defendants dispute that being referenced in an EEOC charge constitutes

5   a protected activity, this argument was raised for the first time in their Reply (Doc. 121,

6   4:14-17; 7:9-10).  The EEOC  was unable to respond to these new arguments, and

7   therefore, the Court declines to consider them.  See Lane v. Dept. of Interior, 523 F.3d

8   1128, 1140 (9th Cir. 2008) (noting that it is in the district court's discretion whether to

9   consider an argument first raised in a reply brief).

10         **B.     Adverse Employment Action**

11         Defendants argue that the EEOC cannot present evidence on the second and third

12  elements:  that Allen experienced an adverse employment action or that there is a causal

13  link between a protected activity and the adverse employment action (Doc. 97, 5:3-7).  To

14  establish an adverse employment action, the EEOC asserts that Defendants subjected

15  Allen to adverse conditions after she was named in Encinas-Castro's EEOC charge by

16  holding the May 30 counseling session (Doc. 106, 8:6-28).  The United States Supreme

17  Court has held that a plaintiff must demonstrate that a reasonable employee would have

18  found the challenged action materially adverse, meaning conduct that would "dissuade a

19  reasonable worker from making or supporting a charge of discrimination." Burlington

20  Northern Santa Fe Railroad Co. v. White, 548 U.S. 53, 68 (2006) (citations omitted).

21         Defendants assert that the May 30 meeting was held to modify Allen's poor job

22  performance through counseling (Doc. 97, 7:17-18).  Any mention of termination by

23  Cornelison was not a threat, but rather a possible consequence if Allen did not improve

24  her job performance (Id. 7:6-11; DSOF ¶ 14).  Furthermore, Defendants contend that

25  Allen was never suspended, demoted, or the recipient of a bad performance review (Doc.

26  97, 7:12-13).  In the company's view, the counseling session was viewed as a success

27

28

1   because no further criticism of Allen was ever reported (Id. 7:14-16).  According to

2   Defendants, nothing at the meeting rose to the level of conduct that would dissuade a

3   reasonable worker from making or supporting a charge of discrimination, and thus, there

4   was no adverse employment action to support a retaliation claim (Id. 7:18-22).

5          In response, the EEOC alleges that the purpose of the meeting was not to address

6   Allen's job performance, but rather to threaten Allen's job as a way of deterring any

7   future assistance of Encinas-Castro's discrimination charge (Doc. 106, 8:12-15).  On the

8   same day that Cornelison fired Encinas-Castro, he arranged a meeting with Allen and

9   three other Creative Networks managers (Id. 8:15-16).  Cornelison allegedly stated, "I

10  want to tell you something right now, I could fire you right now, because this is a right-

11  to-work state, and I don't even have to have a reason, but I want to give you a chance to

12  be a successful employee here."  (Id. 8:17-19; PSOF ¶ 16)  Cornelison's manner

13  throughout the meeting was supposedly belligerent and hostile towards Allen (Doc.

14  106,8:21; PSOF ¶22).  Cornelison allegedly later asked Allen whether she "knew

15  anything about this EEOC charge."  (Doc. 106, 8:22; PSOF ¶ 17)  When she answered

16  no, Cornelison said, "Well, there's been talk that you have been calling back and forth to

17  the Surprise office and spreading rumors."  (Doc. 106, 8:23-24; PSOF ¶ 18)  Allen had

18  never been disciplined previously and Cornelison allegedly did not identify any

19  performance issues at the May 30 meeting (Doc. 106, 8:19-20; PSOF ¶ 21).  The meeting

20  ended by warning Allen that Faulkner would be monitoring her work going forward (Doc.

21  106, 8:26-28; PSOF ¶ 34).

22         As to this second element of a prima facie retaliation claim, the EEOC  has

23  established a genuine issue of material fact as to whether Allen suffered an adverse

24  employment action.  The threats of termination and hostile conduct at the May 30 meeting

25  is reasonably likely to deter others from engaging in protected activity.  See Ray, 217

26  F.3d at 1243.

27

28

C.      **Causal Link**

To establish causation, the EEOC relies heavily on timing.  Proximity of time between protected activity and an adverse action may support an inference of causation. Ray, 217 F.3d at 1244.  "Evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant."  Passantino, 212 F.3d at 507 (citation omitted).  "It is [also] important to emphasize that it is *causation*, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." Porter v. Cal. Dept. of Corr., 419 F.3d 885, 895 (9th Cir. 2005) (emphasis added) (citing Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)). Thus, the Court must look not only to timing but to all of the circumstances to determine whether an inference of causation is possible.  See Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2003).

Defendants argue that the EEOC has no evidence to establish the necessary causal link between the EEOC charge filed by Encinas-Castro that referenced Allen and any retaliatory conduct directed at Allen in the May 30 meeting (Doc. 97, 5:23-25). Defendants contend that without evidence that the employer knew about an employee's protected activity when it took an adverse employment action, the causal link is missing and a Title VII retaliation claim cannot be established by Allen (Id. 5:25-6:1).  See Cohen, 686 F.2d at 796.

In the present case, Defendants claim that none of the participants at the May 30 meeting learned of Allen's association with Encinas-Castro's discrimination charge until five days later when Creative Networks received the charge in the mail on June 4 (Doc. 97, 6:4-6; DSOF ¶¶ 3-6).  Specifically, Faulkner stated at her deposition that the subject of Allen's connection to the EEOC charge was not discussed at the May 30 meeting with Allen (DSOF ¶ 5).  Cornelison stated that the rumor of Encinas-Castro going to the EEOC was discussed in the May 30 meeting with Encinas-Castro, but not in the meeting with

1  Allen later that day (Id. ¶ 6).  As a result, Defendants could not engage in retaliatory
2  conduct if they did not know of Allen's involvement with the Title VII charge (Doc. 97,
3  6:6-9).

4      The EEOC responds by noting the close time proximity between the filing of
5  Encinas-Castro's EEOC charge on May 16, 2003 referencing Allen as a witness and the
6  subsequent May 30, 2003 counseling session with Allen (Doc. 106, 5:22-24).  According
7  to the EEOC, this temporal proximity, when combined with evidence that Encinas-Castro
8  told several people about her charge and Allen's inclusion in it, raises a genuine issue of
9  material fact as to whether Defendants were aware of the charge and Allen being named
10  as a witness prior to the May 30 meeting (Id. 5:24-28).

11      Indeed, the EEOC has presented sufficient evidence to create a genuine issue of
12  material fact with regards to the causal nexus between the protected activity and the
13  adverse employment action.  In regards to timing, Encinas-Castro filed her charge of
14  discrimination with the EEOC on May 16, 2003 (PSOF ¶¶ 1,15).  Allen's name was
15  included in the charge as a witness (Id.).  Less than two weeks later, on May 30, Allen
16  was summoned to a meeting with Cornelison, Faulkner, Clark, and Leary (PSOF ¶ 15).
17  At this meeting, Cornelison allegedly inquired whether Allen knew anything about
18  Encinas-Castro's EEOC charge and threatened to terminate her for spreading rumors with
19  the Surprise office, where Encinas-Castro worked (PSOF ¶¶ 16-18).
20
21      Furthermore, there is evidence that three managers present at the May 30 meeting
22  knew about Encinas-Castro's EEOC charge, including Cornelison, Clark, and Faulkner.
23  After Encinas-Castro informed Allen about the charge, Allen told Faulkner that Encinas-
24  Castro had filed a charge with the EEOC and listed Allen as a witness (Doc. 106, 6:6-8;
25  PSOF ¶¶ 5-6).  On May 19, 2003, Encinas-Castro told Call about her charge and the
26  inclusion of Allen's name as a witness (Doc. 106, 6:12-15; PSOF ¶ 9).  Call then advised
27  Cornelison and Clark about the discrimination charge (Doc. 106, 6:15-16; PSOF ¶ 12).
28  This same evidence also indicates that at least one manager, Faulkner, knew Allen's name

was referenced as a witness (PSOF ¶¶ 5-6).  As a result, the EEOC's evidence is sufficient to create a prima facie case of retaliation under Title VII.  See Chuang v. Univ. of Cal. Davis, Bd. of Trustees., 225 F.3d 1115, 1124 (9th Cir. 2000) ("Under the McDonnell Douglas framework, '[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'") (quotation omitted).

### D.    Pretext

Defendants did not make an argument regarding pretext for retaliation in its motion for summary judgment.  In its motion for summary judgment, Defendants mainly argued that the EEOC could not establish a prima facie case for retaliation.  Because the EEOC has established a prima facie case of retaliation, Defendants' motion for summary judgment is denied.  However, as the issues regarding a legitimate nondiscriminatory reason and pretext should be addressed as a matter of law before engaging in pretrial matters, the Court will allow the parties to file an additional motion for summary judgment, if they so desire.

### CONCLUSION

Summary judgment is not proper as to Kathryn Allen's claim for retaliation under Title VII because the EEOC has demonstrated a prima facie case for the retaliation claim.

Accordingly,

**IT IS HEREBY ORDERED DENYING** Defendants Creative Networks, LLC and Res-Care, Inc.'s Motion for Partial Summary Judgment (Doc. 97).

**IT IS FURTHER ORDERED** that the parties may file a motion for summary judgment regarding the issues of legitimate nondiscriminatory reasons and pretext for Allen's retaliation claim by April 10, 2009, if they so desire.

1   DATED this 9th day of March, 2009.

2

3

4   _____

5   Stephen M. McNamee
    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28