IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>CREATIVE NETWORKS, LLC, an Arizona corporation,<br><br>  Defendant. | No. CV 05-3032-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Before the Court is Defendant Creative Networks, LLC ("Creative Network")'s Motion for Summary Judgment as to Kathy Allen, filed April 10, 2009 (Doc. 132).[1] Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a response on June 12, 2009 (Doc. 143), followed by a supplemental response on July 24, 2009 (Doc. 148).[2] Creative

---

[1] Creative Networks chose not to bring a summary judgment motion with regard to the other Plaintiff in this case, Rhonda Encinas-Castro.

[2] Along with its summary judgment Response, the EEOC filed a motion to strike portions of Creative Networks' summary judgment motion (Doc. 142). The Court granted the motion in part in a July 2, 2009 Order (Doc. 147). The Court ordered that Section III(B) of Creative Networks' motion be stricken because it discusses whether Creative Networks had notice of Rhonda Encinas-Castro's charge of discrimination (Id.). This topic had been decided by the Court in a previous summary judgment ruling (Doc. 130). In addition to striking Section III(B), the Court also ordered the EEOC to file a short response regarding whether being named in an EEOC charge constitutes protected activity (Doc. 147).

A second motion to strike was later filed by the EEOC on September 2, 2009 (Doc. 152). The EEOC requested that the Court strike (1) Section D(1) of Creative Networks' Reply in support of summary judgment and (2) Exhibit D of the Reply. After reviewing the briefing as well as holding oral argument, the Court denied the motion to strike (Doc. 164).

1 Networks then replied on August 10, 2009 (Doc. 150). Creative Networks requested oral
2 argument in connection with its Motion for Summary Judgment (Doc. 132). The parties have
3 had the opportunity to submit evidence and briefing. Accordingly, the Court finds the
4 pending motion suitable for decision without oral argument and Creative Networks' request
5 is denied. See LRCiv 7.2(f), 56.2. Having considered the parties' briefing and other
6 submissions, the Court now issues this Memorandum of Decision and Order denying
7 Creative Networks' motion.

## FACTUAL BACKGROUND

The EEOC alleges that Creative Networks discriminated against two of its employees, Rhonda Encinas-Castro ("Encinas-Castro") and Kathryn Allen ("Allen"), in retaliation for having opposed discrimination and/or having participated in a proceeding under Title VII, including an investigation of alleged employment discrimination (Doc. 1, Compl). Encinas-Castro claims that Creative Networks retaliated against her by terminating her for filing a discrimination charge with the EEOC (Compl. ¶ 9). Allen claims that Creative Networks retaliated against her by holding a corrective counseling session after she was identified as a witness in fellow employee Encinas-Castro's EEOC charge (Id. ¶ 10).

On May 16, 2003, Encinas-Castro filed a charge of discrimination with the EEOC (Doc. 144, Pl's Statement of Facts ("PSOF") ¶ 1; Ex. 1; Ex. 2, Encinas-Castro Decl. ¶ 3).[3] After an EEOC representative interviewed Encinas-Castro, she was told that the EEOC would finish the charge and mail it to her for her signature (Id.). Subsequently, Encinas-Castro received the EEOC charge in the mail, and she signed and dated it on Tuesday, May 20, before mailing it back to the EEOC (Id.). The EEOC received the signed charge on

---

A motion for reconsideration of that Order (Doc. 165) was filed on December 28, 2009 and it was denied by the Court (Doc. 168).

[3]For ease of reference, Exhibit 1-10 are attached to Document 144, EEOC's Statement of Facts. Exhibit A-F are attached to Document 133, Creative Networks' Statement of Facts.

Friday, May 23 (PSOF ¶ 1; Ex. 1). Encinas-Castro's charge specifically included Allen's name as a witness to the discriminatory comments (PSOF ¶ 2; Ex. 1; Ex. 2, Encinas-Castro Decl. ¶ 4).

Upon filing her charge with the EEOC, Encinas-Castro told several coworkers that she had gone to the EEOC to file a charge (PSOF ¶ 3; Ex. 2, Encinas-Castro Decl. ¶¶ 5-7). On May 16, the day Encinas-Castro filed her discrimination charge, she advised Millie Santiago that she had gone to the EEOC to file a charge and identified Allen as a witness (PSOF ¶ 3; Ex. 2, Encinas-Castro Decl. ¶ 6). A few days later, on May 19, Encinas-Castro advised Ginger Call ("Call") that she had gone to the EEOC to file a charge and identified Allen as a witness (PSOF ¶¶ 3, 9; Ex. 2, Encinas-Castro Decl. ¶ 5). Call was a Program Manager with Creative Networks (PSOF ¶ 8). Call then informed her supervisor Jennifer Clark ("Clark") that there was a rumor that Encinas-Castro was going to file a charge of discrimination with the EEOC (Id. ¶ 10; Ex. 3, Call Dep. at 118:6-16). Clark indicated that she was going to pass the information onto Ron Cornelison ("Cornelison"), Executive Director of Creative Networks (PSOF ¶¶ 11, 24; Ex. 3, Call Dep. at 119:8-18). Also, on May 19, Encinas-Castro told Bonnie Cooper ("Cooper") that she had filed an EEOC charge and named Allen as a witness (PSOF ¶¶ 3-4; Ex. 2, Encinas-Casto Decl. ¶ 7). Cooper then told Call that Encinas-Castro had filed a charge, and Call told Cooper that she had already elevated the information about the charge to Cornelison (PSOF ¶ 4; Ex. 4, Cooper Dep. at 22:15-23:20).

Sometime after filing her charge, Encinas-Castro informed Allen that she had named her as a witness in the charge and that the EEOC may be contacting her (PSOF ¶ 5; Ex. 6, Allen Decl. ¶ 3; Ex. 9, Encinas-Castro Dep. At 85:2-17). In turn, Allen confided in Edna Faulkner ("Faulkner"), Coordinator for the Maricopa Integrated Health Services ("MIHS") and Division of Developmental Disability ("DDD"), about Encinas-Castro's charge (PSOF ¶¶ 5-6; Ex. 6, Allen Decl. ¶ 4). Allen also told Faulkner that she had been mentioned as a witness in Encinas-Castro's charge (PSOF ¶ 6; Ex. 6, Allen Decl.¶ 4). On May 29, 2003, Faulkner told Allen that she had been called into a meeting, "they" are aware of Encinas-

1  Castro's charge and "everything is going to really explode now." (PSOF ¶ 7; Ex. 5, Allen
2  Dep. at 90:8-17, 90:21-91:14).  Allen testified that Faulkner told her that Leary and Clark
3  were at the May 29 meeting (Ex. 5, Allen Dep. at 91:15-24).

4        Sometime before May 30, Call spoke again with Clark and Cornelison and advised
5  them of a rumor that Encinas-Castro had gone to the EEOC (PSOF ¶ 12). Cornelison and
6  Clark replied, "Let's bring [Encinas-Castro] in and have a discussion with her." (Id.; Ex. 3,
7  Call Dep. at 120:3-25)  A meeting with Encinas-Castro was held on May 30 and that same
8  day, Cornelison fired Encinas-Castro (PSOF ¶¶ 13-14; Ex. 2, Encinas-Castro Decl. ¶ 12; Ex.
9  3, Call Dep. at 121:3-7). Cornelison testified that after he fired Encinas-Castro, Faulkner told
10 him that he should speak to Allen too (PSOF ¶ 27; Ex. 8, Cornelison Dep. at 175:1-11).

11       After she was fired, Encinas-Castro called Allen and told her about the termination
12 (Ex.5, Allen Dep. 95:13-14; Ex. 6, Allen Decl. ¶ 5). Minutes later, Faulkner came to Allen's
13 office and indicated that Cornelison wanted to speak with Allen (PSOF ¶ 15; Ex.5, Allen
14 Dep. at 95:13-18; Ex. 6, Allen Decl. ¶ 6). In attendance at this meeting was Allen,
15 Cornelison, Clark, Faulkner, and Operations Manager, Linda Leary ("Leary") (PSOF ¶ 15,
16 Ex. 5, Allen Dep. at 95:19-21; Ex. 6, Allen Decl. ¶ 7; Ex. 7, Faulkner Dep. at 96:9-16; Ex.
17 8, Cornelison Dep. at 180:20-23). The EEOC claims that Cornelison, Clark, and Faulkner
18 all knew about Encinas-Castro's charge when they met with Allen (PSOF ¶¶ 5-6,9-10,12).

19       During the meeting, Cornelison told Allen, "I want to tell you something right now,
20 I could fire you right now, because this is a right-to-work state, and I don't even have to have
21 a reason, but I want to give you a chance to be a successful employee here." (Id. ¶ 16; Ex.
22 5, Allen Dep. at 95:22-25) Cornelison then asked Allen what she knew about Encinas-
23 Castro's EEOC charge (PSOF ¶ 17; Ex. 5, Allen Dep. at 96:3-10).  When Allen denied
24 knowing anything, Cornelison told Allen, "'Well, there's been talk that you have been calling
25 back and forth to the Surprise office and spreading rumors,' and . . . 'I want to really try and
26 make you successful here,' and . . . 'I, out of all the people in this company since I've started,
27 I've noticed you with a negative attitude.'" (PSOF ¶ 18; Ex. 5, Allen Dep. at 96:10-16) Prior
28

to the May 30 meeting, Allen had never been disciplined or counseled for performance problems before (PSOF ¶ 21; Ex. 6, Allen Decl. ¶ 1).

During the meeting, Cornelison allegedly spoke to Allen in a belligerent and hostile manner (PSOF ¶ 22; Ex. 6, Allen Decl. ¶ 12). Since Encinas-Castro worked in the Surprise office until her termination, Allen took the reference to her communications with the Surprise office to mean her conversations with Encinas-Castro about the discrimination (PSOF ¶¶ 19-20; Ex.6, Allen Decl.¶ 9). Faulkner also took the comments about the Surprise office to mean Allen's conversations with Encinas-Castro, since the two women were friends (PSOF ¶ 30; Ex. 7, Faulkner Dep. at 101:2-16). At the end of the meeting, Cornelison indicated that he was going to have Faulkner monitor Allen's work in the future (PSOF ¶ 32; Ex, 5, Allen Dep. at 96:23-97:2).

Allen believed her job was threatened based upon (1) Cornelison's statement that Allen could be fired "right now" because "Arizona is a right-to-work state"; (2) the reference by Cornelison to the EEOC charge filed by Encinas-Castro shortly after her termination earlier in the day; (3) Cornelison's angry and hostile demeanor; and (4) Encinas-Castro's termination on the same day (PSOF ¶ 23; Ex. 6, Allen Decl. ¶ 13). During the meeting, Allen never acknowledged that she had a poor attitude or that she would improve her job performance (PSOF ¶ 31). Leary told Allen that the meeting was not related to Allen's job performance (Id.).

**PROCEDURAL BACKGROUND**

Allen filed a Charge of Discrimination with the EEOC on March 19, 2005(Doc. 133, Ex. E).[4] On September 30, 2005, the EEOC filed suit, on behalf of Allen, under Title VII of

---

[4]This complaint alleged that after Allen's name was referenced in Encinas-Castro's EEOC charge, Allen was called into a meeting with Cornelison, Faulkner, Clark, and Leary (Doc. 132, Ex. E). During the meeting, "Cornelison made false accusations about me, advised me my work performance would be monitored, and threatened to terminate my employment." (Id.) Additionally, "Cornelison harassed and intimidated me by advising me that Arizona is a right to work state and he could terminate my employment at any time." (Id.)

- 5 -

the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 (Doc. 1). The initial complaint sued both Creative Networks, LLC and its parent company, Res-Care, Inc. The EEOC alleged that Defendants subjected Allen to adverse employment actions in retaliation for opposing what she reasonably believed was discrimination and/or participating in a proceeding pursuant to Title VII, including being named as a witness in Encinas-Castro's charge of discrimination (Compl. ¶ 10). The alleged retaliatory acts included discipline and threats of termination (Id.).

On April 11, 2008, Defendants brought two summary judgment motions (Doc. 93, 97) and the EEOC filed one as well (Doc. 95). The EEOC's motion requested the dismissal of four of Defendants' affirmative defenses: statute of limitations, laches, estoppel, and waiver (Doc. 95). After the motion was filed, the parties reached a stipulation to exclude the four affirmative defenses (Doc. 109). Pursuant to the stipulation, the Court ordered that the specified affirmative defenses be stricken from Defendants' Answers, and the EEOC's summary judgment motion was denied as moot (Doc. 119).

The second motion, filed by Defendant Res-Care, sought its dismissal from the case because it was not involved in its subsidiary Creative Networks' personnel decisions (Doc.93). The Court granted this motion on March 19, 2009 and dismissed Res-Care from the case (Doc. 131). Pursuant to Federal Rule of Civil Procedure 54(b), Res-Care moved for entry of a final judgment on April 13, 2009 (Doc. 134). The Court granted Res-Care's motion (Doc. 137), and final judgment as to Res-Care only was entered on May 4, 2009 (Doc. 138).

Finally, both Defendants brought a Motion for Partial Summary Judgment as to Kathy Allen (Doc. 97). In this motion and the EEOC's response, the parties focused on the prima facie case for retaliation. The Court denied Defendants' motion and allowed the parties to file another summary judgment motion addressing legitimate, non-discriminatory reason and pretext (Doc. 130). This motion is the one pending before the Court.

**STANDARD OF REVIEW**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant "may not rely merely on allegations or denials of its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

**DISCUSSION**

Creative Networks seeks summary judgment on the EEOC's claim of retaliation related to Allen, asserting there are no genuine issues of material fact from which a jury could conclude that Creative Networks retaliated against Allen in violation of Title VII.

Specifically, Creative Networks asserts that the EEOC cannot establish a retaliation claim as to Allen for two separate reasons: (1) Allen is not entitled to the protection of Title VII's participation clause pursuant to 42 U.S.C. § 2000e-3 and (2) Creative Networks demonstrates a legitimate, non-discriminatory reason for its May 30, 2003 counseling session with Allen (Doc. 132, 1:18-24).

**I.     Retaliation**

The EEOC alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Title VII makes it an unlawful employment practice for an employer to discriminate against an individual because she has opposed any employment practice made unlawful by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

To establish a prima facie retaliation claim under Title VII, an employee must show that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000) (citation omitted); Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002). To show the requisite causal link, the plaintiff must present sufficient evidence to raise an inference that the protected activity was the likely reason for the adverse action. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

If a plaintiff has shown a prima facie retaliation claim, then the burden shifts to the defendant to furnish legitimate nondiscriminatory reasons for the adverse employment action. Ray, 217 F.3d at 1240. If the defendant meets that burden, then the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. Id. The plaintiff may show pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting Chaung v. Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir. 2000)). Circumstantial evidence relied on to show pretext must be "both specific and substantial." Id.

### A.   Prima Facie Case

The Court previously found that the EEOC produced the minimal requisite degree of proof necessary to establish a prima facie case of retaliation (Doc. 130). Then in response to an EEOC motion, the Court allowed additional briefing solely on the issue of protected activity (Doc. 147). Protected activity, one of the components of a prima facie case, had not been raised until Creative Networks' reply, and thus, the EEOC had not been afforded an opportunity to address the issue (Id.). Moreover, the Court found that the issue of whether being named as a witness in an EEOC charge constituted protected activity was a novel one in the Ninth Circuit that should be addressed prior to any trial (Id.).

42 U.S.C. § 2000e-3(a) states that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made [unlawful by Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." This provision has two components: an opposition clause and a participation clause. Allen cannot seek protection under the opposition clause because she did not oppose the discrimination suffered by Encinas-Castro.[5]   As a result, Allen must rely solely on the participation clause,

---

[5]Although the EEOC's Complaint states that Allen was retaliated against "for opposing what she reasonably believed was discrimination and/or participating in a proceeding pursuant to Title VII", Allen is not protected under the opposition clause (Compl. ¶ 10). To find protection under the opposition clause, an employee must have opposed an employment practice made unlawful by the statute. 42 U.S.C. § 2000e-3(a). In other words, the opposition must be to an employment practice of the employer. Here, Allen took no action to oppose any unlawful employment practices of Creative Networks.

contending that she "testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."

According to Creative Networks, protected activity under Title VII's participation clause requires an affirmative action, such as testifying, assisting, or participating in an investigation, proceeding, or hearing (Doc. 132, 5:6-8). Creative Networks asserts that Allen's passive acts of being named as a witness in Encinas-Castro's EEOC charge and telling others that she had been named is not enough to gain protection under the participation clause (Id. 5:17-19). Allen had not made a charge of discrimination, testified, or participated in an investigation, proceeding, or hearing (Id. 5:21-23). Moreover, argues Creative Networks, Allen did not even know that she had been named in the EEOC charge until after the fact (Id. 5:16-17).

The EEOC, however, contends that simply being named in an EEOC charge is sufficient for protection under the participation clause for two reasons. First, the plain language of Title VII's retaliation provision broadly protects assistance or participation in an investigation "in any manner." (Doc. 148, 2:23-27). According to the EEOC, this phrase "in any manner" is broadly interpreted by courts such that its expansive meaning is given literal effect (Id. 4:9-11). Second, the EEOC argues that the purpose of Title VII's retaliation provision is to protect employees like Allen (Id. 4:22-5:2). Without such protection, named witnesses could be intimidated freely by an employer into not testifying on behalf of a co-worker (Id. 5:3-10). Such threats would deter employees from serving as witnesses and harm Title VII prosecutions (Id. 5:22-6:2).

The Court finds no Ninth Circuit authority directly on point on the issue of whether being named as a witness in a EEOC charge constitutes protected activity. However, courts have utilized the approach advocated by the EEOC and considered both the statutory language and purpose of Title VII in determining whether an activity is protected under the anti-retaliation clause.

1. Plain Language of Retaliation Clause

In construing a statute, a court must start with the language of the statute itself. The Supreme Court has advised, "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). When the words of a statute are unambiguous, judicial inquiry ends upon a review of the statute's language. Id. at 254.

42 U.S.C. § 2000e-3(a) states that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made [unlawful by Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." Courts have consistently recognized that the explicit language of the participation clause offers broad protection to Title VII claimants. In Deravin v. Kerik, the Second Circuit stated that the "explicit language . . . is expansive and seemingly contains no limitations." 335 F.3d 195, 203 (2d Cir. 2003). The court found that the words "participate[] in any manner" evinced Congress' intent to confer broad protection because the word "any" had an expansive meaning. Id. at 204. "So long as 'Congress did not add any language limiting the breadth of that word,' the term 'any' must be given literal effect." Id. (quoting United States v. Gonzales, 520 U.S.1 (1997)). Likewise, the Eleventh Circuit in Merritt v. Dillard Paper Co. stated that the anti-retaliation provision is "straightforward and expansively written." 120 F.3d 1181,1186 (11th Cir. 1997). The court continued, "as to 'participated in any manner,' the adjective 'any' is not ambiguous; it has a well-established meaning. . . 'Congress did not add any language limiting the breadth of that word,' so 'any' means all." Id. (quoting Gonzales, 520 U.S. 1).

Other circuits, including the Ninth, have adopted a similarly broad reading of the participation clause. See e.g., Pettway v. Am. Cast Iron Pipe Co., 411 F.2d 998, 1006 n.18 (5th Cir. 1969) (noting that the participation clause provides "exceptionally broad" protection for employees covered by Title VII); Booker v. Brown & Williamson Tobacco Co., 879 F.2d

- 11 -

1304, 1312 (6th Cir. 1989) (noting that "federal courts have generally granted less protection for opposition than for participation" and that the participation clause offers "exceptionally broad protection"); Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988) ("The participation clause is broadly construed to protect employees who utilize the tools provided by Congress to protect their rights.")(citation omitted); Kelly v. City of Albuquerque, 542 F.3d 802, 814 (10th Cir. 2008) ("The term 'any' carries an expansive meaning when . . . it is used without limitation. . . When the term is given its natural effect in this statutory context it relates to all types of participation.") (citation omitted).

As stated above, when the words of a statute are unambiguous, judicial inquiry ends upon a review of the statute's language. Conn. Nat'l Bank, 503 U.S. at 254. As a result, reliance on the statute alone likely is sufficient to find that Allen engaged in protected activity when she was named as a witness in Encinas-Castro's charge of discrimination. The participation clause has been given an expansive meaning by the courts and interpreted very broadly to encompass many forms of participation. See e.g., Hashimoto v. Dalton, 118 F.3d 671, 680 (9th Cir. 1997) (initiating complaint with EEOC counselor is protected activity); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 174-75 (2d Cir. 2005) (employee named as witness in deposition but who never testifies engages in protected activity); Merritt, 120 F.3d at 1186 (employee who involuntarily testifies engages in protected activity).

Here, Allen was named specifically in Encinas-Castro's charge of discrimination as a witness to discriminatory conduct and then discussed that fact with both Encinas-Castro (PSOF ¶ 5) and Faulkner (PSOF ¶¶ 5-6). These actions associated Allen with Encinas-Castro's Title VII claim and were sufficient to place her within the protection of the participation clause.

2. Purpose of Retaliation Provision

In addition to the statutory language, some courts consider the broader context of the statute as a whole to ensure that statutory provisions are interpreted consistent with a statute's overall purpose. See Robinson v. Shell Oil Co., 519 U.S. 337, 345-46 (1997). The anti-

retaliation provision 42 U.S.C. § 2000e-3(a) is meant to prevent harm to employees who report discriminatory employment practices or assist in the investigation of these practices. Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn., 129 S. Ct. 846, 852 (2009). The Supreme Court in Crawford held that "prudent employees would have a good reason to keep quiet about Title VII offenses against themselves or against others" if an employer could punish employees who reported discrimination without remedy. Id. The purpose of the anti-retaliation clause is to "[maintain] unfettered access to statutory remedial mechanisms." Robinson, 519 U.S. at 346; see also Glover v. S.C. Law Enforcement Div., 170 F.3d 411, 414 (4th Cir. 1999) ("Section 704(a)'s protections ensure not only that employers cannot intimidate their employees into foregoing the Title VII grievance process, but also that investigators will have access to the unchilled testimony of witnesses."); Booker, 879 F.2d at 1313 ("The purpose of the statute is to protect access to the machinery available to seek redress for civil rights violations and to protect the operation of that machinery once it has been engaged.").

In Jute, a case on which both parties rely, the Second Circuit considered the anti-retaliation provision's broader context to ensure that its language was interpreted consistent with Title VII's overall purpose. 420 F.3d at 174. The court determined that the anti-retaliation clause was enacted to shield an employee who attempts to challenge discriminatory conduct from retaliation by his employer. Id. at 175. To leave an employee who is "poised to support a co-worker's discrimination claim wholly unprotected" would be destructive of that purpose and would mean that an employer could retaliate freely provided that it did so before the employee testified or otherwise participated in a Title VII proceeding. Id.

Beyond the broad statutory language, the Court finds that the purpose of Title VII's retaliation provision is to protect employees like Allen whether they are poised to support a co-worker's discrimination claim, dispute the claim, or merely present percipient observations. Investigators must have access to witness testimony that has not been shaped

by an employer in an attempt to avoid liability. Having been named in a EEOC charge, Allen may have been contacted by the EEOC during their investigation and asked to provide a statement. Without the protection of Title VII, witnesses named in EEOC charges could be intimidated into not testifying or supporting a co-worker's discrimination claims. Title VII prosecutions would be chilled because witnesses would be afraid of retaliation by their employers.

### 3. Jute v. Hamilton Sundstrand Corporation

Both parties rely on the Second Circuit's decision in Jute for their arguments regarding protected activity. 420 F.3d at 174. In that case, the plaintiff Donna S. Jute alleged that she was retaliated against after she was named as a witness in co-worker Maryanne Brunton's Title VII suit. Id. at 169. After Brunton had claimed that sexually disparaging flyers about her were posted in the workplace, Jute provided two statements to investigators. Id. When Brunton later sued alleging a hostile work environment, Jute agreed to testify on Brunton's behalf and saved vacation days to insure that she was readily available. Id. Additionally, Brunton at her deposition named Jute as a favorable witness and the only person to observe the posting of the flyers. Id. The following day, Jute was removed from a team responsible for a computer system upgrade. Id. at 170. After contacting Brunton to inquire whether she would be deposed, Jute learned for the first time that Brunton's case had settled and that she had been named as a favorable witness by Brunton during her deposition. Id. Jute claimed that the removal from the team, among other adverse employment actions, was in retaliation for being named as a witness in Brunton's deposition. Id. at 170-71.

Although Jute never actually testified, the Second Circuit held that she was protected under the anti-retaliation clause. After an examination of the statute's language and overall purpose, the court held that the participation clause extends to an employee who is named as a voluntary witness in a Title VII suit, but who never is called to testify. Id. at 168, 175. As such, Jute engaged in a protected activity for purposes of a retaliation claim. Id. at 175.

The EEOC argues that similar to Jute who was named by Brunton in her deposition as a favorable witness, Allen participated in the investigation of Encinas-Castro's Title VII claim by being named as witness in her EEOC charge (Doc. 148, 4:4-6). However, Creative Networks argues that this case is distinguishable because Jute was a *voluntary* witness entitled to protection because of her involvement in the Brunton litigation (Doc. 150, 5:15-18). Jute voluntarily gave statements to the employer's investigators and planned to testify in support of Brunton's discrimination claims (Id. 4:18-21). She even saved vacation days in order to be immediately available (Id.). Allen, on the other hand, was a "passive participant" who name happened to appear in the EEOC charge, without her knowledge (Id. 5:26-6:1). Creative Networks argues that there is no evidence that she volunteered to testify or planned to testify on Encinas-Castro's behalf (Id. 6:1-3).

A review of the Second Circuit's decision reveals that there are several similarities between the facts of the present case and the Jute case. First, similar to Jute who was named in a deposition but never testified, Allen was named in an EEOC charge but was never called to testify or otherwise support Encinas-Castro's discrimination claim. Also, similar to Jute who was unaware that Brunton had named her as a favorable witness, Allen did not know that Encinas-Castro included her name in the EEOC charge until after the fact. However, as Creative Networks points out, Jute had taken certain affirmative steps that evidence her involvement. She had provided statements voluntarily to the employer's investigators and reserved vacation days to be available to testify. Allen, on the other hand, took no steps besides telling Faulkner after the fact that she was named in Encinas-Castro's EEOC charge. In this sense, Allen was an involuntary participant who was forced into the midst of Encinas-Castro's discrimination claim.

While the facts in Jute are somewhat distinguishable, the Court adopts the approach of the Second Circuit in examining the statutory language and purpose of Title VII, as discussed above. See pp. 11-14. Under this analysis, the Court finds that Allen engaged in a protected activity when she was named in Encinas-Castro's EEOC charge, and thus, the

first prong of Allen's prima facie case is met. The Court previously found that the EEOC produced the minimal requisite degree of proof necessary to establish the other two prongs of a prima facie case of retaliation: adverse employment action and causation (Doc. 130).

### B. Legitimate Non-Discriminatory Reason

Once the prima facie case of retaliation has been established, a defendant must articulate a legitimate, non-discriminatory reason for its actions. See Davis v. Team Elec. Co., 520 F.3d 1080, 1094 (9th Cir. 2008). Creative Networks argues that it had a legitimate, non-discriminatory reason for the May 30, 2003 counseling session with Allen. According to Creative Networks, Allen suffered from several performance problems: (1) Allen had difficulty adjusting to the change in culture from a "mom and pop" company to the larger Creative Networks (Doc. 133, Def's Statement of Facts ("DSOF")¶ 6); (2) Allen was found "sitting in someone else's room" rumoring and gossiping (DSOF ¶¶ 9-10); and (3) Allen was calling Creative Networks' Surprise office (DSOF ¶ 13). The EEOC also concedes that Creative Networks has met its burden of offering a legitimate, non-discriminatory reason for its action (Doc. 143, 7:12-13, 8:1-2).

### C. Pretext

The EEOC is now required to produce evidence sufficient to create a genuine issue of fact as to whether Creative Networks' legitimate and non-discriminatory reason was a mere pretext for discrimination. The EEOC "can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence" because it is inconsistent or otherwise not believable. Vasquez v. County of L.A., 349 F.3d 634, 641 (9th Cir. 2003) (citation omitted). "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." Id. at 642 (citation omitted). The same evidence can be used to establish a prima facie case and to create a genuine issue of material fact as to whether an employer's explanations are

pretextual. Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 870 (9th Cir. 1996) (citation omitted).

The EEOC has offered no direct evidence, but rather has relied upon only circumstantial evidence. Several of the EEOC's arguments regarding pretext are unavailing. The EEOC contends that Creative Networks' claim that Allen had difficulty adjusting to the change in culture is unworthy of credence (Doc. 143, 9:21-10:3). The EEOC asserts that Creative Networks was not a "mom and pop" company during Allen's employment because Res-Care had purchased Creative Networks three years prior to Allen's hiring (Id. 10:3-8). However, the deposition testimony submitted by the parties shows that Creative Networks' culture changed when Cornelison assumed control of the company, rather than earlier. (DSOF ¶ 6; Doc. 133, Ex. F, Faulkner Dep. at 26-27). Even after the merger of Creative Networks and Res-Care, the "mom and pop" management remained in place until August 2002 when Cornelison was hired (PSOF ¶ 37). Allen worked at Creative Networks starting in October 2001 and Cornelison did not start until August 2002 (PSOF ¶¶ 35, 37). Thus, Allen worked in a "mom and pop" type atmosphere for nearly a year before Cornelison's hiring and she was reluctant to adapt to the new corporate culture.

Additionally, the EEOC argues that Creative Networks' claim that Allen's poor performance motivated the counseling session is undermined because Allen had never been disciplined or counseled prior to May 30, 2003 (Doc. 143, 10:9-13). However, Faulkner testified at her deposition that she had previously counseled a group of employees, including Allen, regarding the company's expectations (Doc. 133, Ex. F, Faulkner Dep at 70-71).

Furthermore, the EEOC points to the fact that no other employees were summoned into counseling sessions for trouble adjusting to the culture change (Doc. 143, 10:24-28). In response, Creative Networks argues that several other employees were similarly counseled during the relevant period, including some for negative attitudes (Doc. 150, 10:13-15). Creative Networks references a chart submitted with its Initial Disclosure Statement that lists the terminated employees for the relevant period, as well as to counseling notes taken by

Cornelison and other managers (Id. 10:17-19; Doc. 133, Ex. D). However, the EEOC failed to conduct discovery regarding these terminations. Even if Allen was treated differently than other employees, as the EEOC claims, such an argument is more appropriate for a disparate treatment claim, rather than one for retaliation. The EEOC must show not that Allen was treated differently, but rather that she was counseled because of her protected activity, i.e. being named as a witness in an EEOC charge.

Despite these unsuccessful arguments, the Court finds that the EEOC nevertheless has met its burden of showing that Creative Networks' legitimate, non-discriminatory reason for counseling Allen was pretextual. First, the close proximity in time between the protected conduct and the adverse employment action is evidence of pretext (Doc. 143, 9:12-20). Pretext can be established where there is a short period of time between the protected conduct and the adverse action. See Miller v. Fairchild Indus., Inc., 885 F.2d 498, 505 (9th Cir. 1989) (stating that a jury could find pretext based on close proximity between the protected conduct and the adverse action); Passantino, 212 F.3d at 507 ("[E]vidence based upon timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant.") (citation omitted). Encinas-Castro went to the EEOC on May 16, 2003 to file a charge of discrimination that included Allen's name as a witness (protected conduct) (PSOF ¶¶ 1,2). Less than two weeks later, on May 30, 2003, Allen was called into a counseling session where her job was threatened (adverse action) (Id. ¶ 15). This close proximity in time between the filing of Encinas-Castro's EEOC charge naming Allen and the counseling session contributes to a finding that Creative Networks' reasons for counseling Allen were pretextual.

Second, the manner in which the May 30, 2003 counseling session was conducted provides some evidence that the real reason for the meeting was to deter Allen from assisting Encinas-Castro with her discrimination charge or from filing one of her own (Doc. 143, 11:3-6). Cornelison summoned Allen to his office shortly after firing Encinas-Castro (PSOF ¶ 15; Ex. 5, Allen Dep. at 95:13-18; Ex. 6, Allen Decl. ¶ 6). In addition to Cornelison, three other

managers were in attendance at the counseling session (PSOF ¶ 15; Ex. 5, Allen Dep. at 95:19-21; Ex. 6, Allen Decl. ¶ 7; Ex. 7, Faulkner Dep. at 96:9-16; Ex. 8, Cornelison Dep. at 180:20-23). During the session, Cornelison threatened Allen's employment by stating, "I want to tell you something right now, I could fire you right now, because this is a right-to-work state, and I don't even have to have a reason, but I want to give you a chance to be a successful employee here." (PSOF ¶ 16; Ex. 5, Allen Dep. at 95:22-25) Additionally, Cornelison's manner was belligerent and hostile towards Allen, even though her alleged performance issues were non-terminable offenses (Doc. 132, 7:25-26; PSOF ¶¶ 21-22).

Third, the reference to Encinas-Castro and her protected conduct during the May 30, 2003 counseling session with Allen suggests that the counseling session was about intimidating Allen (Doc. 143, 12:1-5). Cornelison asked whether Allen "knew anything about this EEOC charge" during the counseling session and stated, "Well, there's been talk that you have been calling back and forth to Surprise office and spreading rumors." (PSOF ¶¶ 17-18; Ex. 5, Allen Dep. at 96:3-16) Since Encinas-Castro worked in the Surprise office prior to her firing, Allen understood Cornelison's reference to the Surprise office to be a reference to Encinas-Castro (PSOF ¶¶ 19-20; Ex. 6, Allen Decl. ¶ 9). Faulkner also took the comments about the Surprise office to mean Allen's conversations with Encinas-Castro, since the two women were friends (PSOF ¶ 30; Ex. 7, Faulkner Dep. at 101:2-16).

The Court finds genuine issues of material fact exist regarding whether Creative Networks' proffered reason for counseling Allen is unworthy of credence. Creative Networks held the May 30, 2003 counseling session only two weeks after Encinas-Castro had gone to the EEOC to file a discrimination charge and named Allen as a witness. The counseling session also was held within minutes of Encinas-Castro's termination. Additionally, during the counseling, Creative Networks referenced both Encinas-Castro's discrimination charge and Allen's discussions with the Surprise office, where Encinas-Castro worked. Moreover, Creative Networks threatened Allen for what it admits were non-terminable offenses. The Court finds that a reasonable jury could conclude that the purpose

of the May 30, 2003 counseling was to threaten Allen's termination to deter her from assisting Encinas-Castro with her claim, or to discourage Allen from filing her own discrimination claim. As the Court cannot find that Creative Networks is entitled to summary judgment as a matter of law on Allen's retaliation claim, the Court denies Creative Networks' motion.

## CONCLUSION

Summary judgment is not proper because the EEOC has demonstrated a genuine issue of material fact as to Kathryn Allen's claim for retaliation under Title VII.

Accordingly,

**IT IS HEREBY ORDERED DENYING** Defendant Creative Networks, LLC's Motion for Partial Summary Judgment (Doc. 132).

**IT IS FURTHER ORDERED** setting a final pretrial conference for **Wednesday, March 3, 2010 at 2:00p.m.** before the Honorable Stephen M. McNamee in Courtroom 605 at 401 W. Washington Street, Phoenix, Arizona 85003.

DATED this 15th day of January, 2010.

_____
Stephen M. McNamee
United States District Judge